MRS. DORA BILLINGSLEY *v.* ILLINOIS CENTRAL R. R. Co.

[56 South. 790.]

1. APPEAL AND ERROR. *Evidence. Peremptory instruction. Proximate cause. Contributory negligence. Signals. Statutory presumptions. Code of 1906, section 1985.*

The supreme court on an appeal from a judgment for the defendant based on a peremptory instruction, must resolve a conflict in the evidence in favor of the plaintiff and assume that his testimony is true.

2. PROXIMATE CAUSE. *Negligence.*

In order for liability for injury to be fastened on a defendant, it is necessary that its negligence should be the proximate cause of the injury, and to constitute "proximate cause" there must be causal connection between the injury and the negligence.

3. STATUTORY SIGNALS. *Proximate cause. Negligence. Injury to persons.*

   Where a defendant railroad was negligent in failing to give the signals for crossing as required by law, the plaintiff cannot complain, where she saw the train long before it reached the crossing and in such case there was no casual connection between the failure to give the signal and the plaintiff's injury.

4. CONTRIBUTORY NEGLIGENCE. *Railroads. Injury to persons.*

   A mother who saw her seventeen months old infant on or near a railroad track and seeing an approaching train immediately ran to the rescue of the child, and was struck by the train as she crossed the track, was not guilty of contributory negligence.

5. CODE 1906, SECTION 1985. *Prima facie evidence.*

   Under Code of 1906, section 1985, so providing, the simple proof of injury by the running of railroad cars is *prima facie* evidence of liability, but this presumption in all cases must yield to the facts and when all the facts relating to the injury are in evidence and there is no conflict, the court has a right to draw a conclusion based on the facts and in a proper case to give a peremptory instruction as the facts may justify.

6. SAME.

   Where a party is injured by a running train, positive, direct evidence as to the time when such party is seen upon the track, and as to the skill and diligence used thereafter to avoid the injury is not indispensable, these facts may be proved by circumstances, and are inferences to be drawn by the court or jury in applying their common observation and experience.

APPEAL from the circuit court of Attala county.
HON. G. A. McLEAN, Judge.

Suit by Mrs. Dora Billingsley against the Illinois Central Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are stated in the opinion of the court.

*Watkins & Watkins,* for appellant.

We submit that the question of whether the negligent failure of the engineer to whistle and ring the bell as

provided by the law for just such cases as this, was the proximate cause of the injury, is one which should have been submitted to the jury for their determination, and should not have been arbitrarily determined by the court; and it was for the jury to say whether under all the circumstances and surrounding conditions the giving of the warning signals on approaching the crossing would not have frightened the child and caused it to change its position before the nearness of the approaching train had paralized it with fear. The child was standing on the track, and whatever cause it might have taken to get away from the sounds that frightened it, it would have escaped from the region of danger, and the plaintiff would not have been injured, as the injury is shown to have occurred in the instant taken by her in grasping her childs uplifted hands and swinging it out of the region of danger, and off of the track where it was standing.

When there is a negligent failure of the defendant railroad company to perform a duty required by law to be performed by it, and an injury occurs which might reasonably not have occurred had the defendant complied with its duty and the law; then it is incumbent on the railroad to show that said omission or negligent failure was not the proximate cause of the injury. At least it is for the jury to say whether the evidence and the circumstances of the case show that the negligence of the defendant proximately caused the injury. Counsel for the appellee realized this and tries to show that this neglect to sound the warning was not the cause of the accident.

Counsel for the appellee says that the failure to give warning is immaterial "as the plaintiff testified that she saw the train coming while on the gallery of her house, and it was the sight of the train itself approaching the crossing where the child was that made her run down to the crossing and go on the track." We sub-

mit that counsel is mistaken as to the import of this testimony. What he relies upon as showing that the negligence of the defendant was not the proximate cause of the injury is evidence directly to the contrary and with telling effect. Had the warning been given, the sight of the approaching train would not have been the thing that sent the woman flying to the crossing, but at the sound of the whistle, before ever the train itself came in sight, the mother on her gallery would instantly have seen the child and comprehended its peril. Certainly, the failure to observe the danger of the child a moment sooner caused the injury, and had the whistle been sounded one cannot with reason argue that the mother would have failed to appreciate the child's danger or have waited until the train was in plain view before going to the rescue, for simultaneously with the knowledge of the child's position and the approach of the train, as soon as she was aware that the train was coming she went at her utmost speed to where the infant stood.

We submit, therefore, that counsel for the appellee is not justified by law in saying that the plaintiff had that knowledge which the law intended she should have, because she saw the train approaching. A person crossing the track under ordinary conditions, and seeing the train might under some circumstances be presumed to have had warning, regardless of the neglect of the whistle and bell, but this is a different case. The crossing must be reached and the child saved; a certain number of seconds is necessary; the question then becomes vital, as to whether the plaintiff would not have realized sooner the approach of the train had she been given the warning which she was entitled to have had.

Counsel for the defendant in his brief insists that because the defendant's engineer testifies that when he saw the child he did everything in his power to stop the train before it reached the crossing, the defendant is absolved from liability. We respectfully submit that this is not

the test of liability of the defendant. The same argument might be made with equal propriety if the engineer had had his back to the crossing and had been talking with the brakeman who was riding with him in the engine and had not looked out until the engine was upon the crossing. We further submit that it is reasonable to say that the careless and negligent state of mind of the engineer which caused him to pass unseeing by the whistle board a quarter of a mile, above the crossing persisted and caused him to negligently fail in keeping his look out and fail to see the child until too late to stop the train. The testimony of the engineer is that when he saw the child it was too late to stop. The question naturally comes up, Why did he not see it sooner? As a matter of fact he never did stop the train until he had gotten nearly a quarter of a mile below the place, from this it would appear that he had not put on the emergency brake until he was very close to the crossing. The mother saw it before he did according to her testimony; he had an unobstructive view of the track a quarter of a mile above the crossing.

We respectfully submit that the case developed by the evidence is one which should have been presented to the jury, and would respectfully direct the attention of the court to a discussion of the foregoing questions contained in 2 Thompson on Negligence (2nd Ed.), paragraphs 1817 and 1823; also, *Chi. R. R. Co.* v. *Logue,* 58 Ill. 621, 42 N. E. P. 53.

Counsel for the appellee argues at length the subject of the contributory negligence of the mother in not keeping the child in a place of safety, and in not having a fence around her house, and tries to show that this negligence of the mother would prevent recovery in this case. We submit that this question was one to be submitted to the jury. We would call the attention of the court to the discussion of this question in Thompson on Negligence (2nd Ed.), paragraph 1817. In this section

the learned author states that even as to trespassing children not on crossing, "In most cases the question whether the parents of the child are negligent in permitting it to escape from them and go on the railroad track will present a question of fact to be answered by the jury in view of all the surrounding circumstances, and not a question of law for the court." And in this case the child was not a trespasser but was on the crossing of a public road.

We respectfully submit that the cases cited by the counsel of appellee in support of this part of his argument without exception, will be found not to apply to the case at bar. A number of them are cases where the child is allowed by the parent to play upon the track of the railroad knowingly. Others will be found to deal with cases in which the child suddenly ran across a busy street and was run over by a street car, the child not having been properly restrained by its guardian. In this case the child was momentarily out of sight of the mother, whose lack of means forced her to do other work about the house than merely to look after the child, and prevented her hiring a nurse to take care of it for her. Without her knowledge or acquiescence in its course it stole away nearly a hundred yards to the crossing of the public road and the railroad where there is no evidence to show that it had ever been before. We respectfully suggest that a careful reading of the authorities cited by opposing counsel does not justify his conclusions, and that the case should be reversed and remanded.

*Teat & Niles,* for appellant.

The court erred in granting a peremptory instruction to the jury to find for the defendant.

Upon the question of the right of the trial court to grant a peremptory instruction for the defendant, we desire at the outset to submit the following propositions:

1. A peremptory instruction must not be granted unless all of the testimony in the record and a fair infer-

ence to be drawn from it, taken together, would not support a verdict for the plaintiff.

2. That question of negligence are for the jury and only in rare instances, should the trial court determine this question.

3. It is fundamental that the court is authorized in instructing a verdict in a case tried by a jury, only where the evidence is such that reasonable minds cannot differ in the conclusions to be drawn from it; and the evidence in this case was such as to demand submission of this issue to the jury. *Cross* v. *I. C. R. R. Co.*, 110 S. W. 290, 110 S. W. 382; *R. R. Co.* v. *Joshlin*, 110 S. W. (Ky.) 382; *Bell* v. *Railroad Co.*, 87 Miss. 234; *Stevens* v. *Ry. Co.*, 81 Miss. 195; *Allen* v. *R. R. Co.*, 88 Miss. 26, and authorities mentioned in those opinions; *Nesbit* v. *City of Greenville*, 69 Miss. 22; *Whitney* v. *Cook*, 53 Miss. 551; 29 Cyc., page 523; Beach on Contributory Negligence, section 14; *L. & N. R. R. Co.* v. *Orr*, 26 So. 35; *Whitworth* v. *Shreveport Belt Ry. Co.*, 112 La. 373, 65 L. R. A. 132, 36 So. 414; *Eckert* v. *Long Island R. R. Co.*, 43 N. Y. 502; *Ninnehan* v. *Sampson*, 126 Mass. 506; *Pennsylvania Co.* v. *Langdendorf*, 13 L. R. A. 190; *Chicago Terminal Transfer Co.* v. *Kotosko*, 101 Ill. App. 306; *Sailor* v. *Parson*, 122 Iowa, 681, 64 L. R. A. 544; *Mobile, etc. R. R. Co.* v. *Ridley*, 114 Tenn. 727; *Anderson* v. *Telephone Co.*, 86 Miss. 341; *Jones* v. *I. C. R. R. Co.*, 75 Miss. 970; *Jackson* v. *R. R. Co.*, 76 Miss. 607; *Louisville, etc. R. R. Co.* v. *Crominarity*, 86 Miss. 464; *Shepherd* v. *Railroad Co.*, 95 Miss. 50; *In Wooten* v. *R. R. Co.*, 79 Miss. 26; *Rhymes* v. *Electric Ry. Co.*, 85 Miss. 140; *N. I. & N. R. R. Co.* v. *Brooks*, 38 So. 40; *Young* v. *I. C. R. R. Co.*, 46 So. 870; *Hopson* v. *K. C. M. & B. R. R. Co.*, 40 So. 872; *Young* v. *Southern Ry. Co.*, 52 So. 19; *Owens* v. *Y. & M. V. R. R. Co.*, 47 So. 518, 95 Miss. 387; *Skipworth* v. *M. & O. Ry. Co.*, 48 So. 964; *I. C. Ry. Co.* v. *Armstrong*, 47 So. 427; *Coombs et al.* v. *M. & O. Ry. Co.*, 46 So. 168.

*Mayes & Longstreet,* for appellee.

The case went off in the court below on a peremptory instruction for the defense, from which this appeal is taken.

The brief for appellant has quite a good deal to say about the conditions under which a peremptory instruction will be given, and discusses at considerable length the cases in which this court has stated those conditions. We do not propose to go into that. It has now become elementary, and it is too clear that the judges of this court do not need any light on that proposition.

Also, the brief for the appellant has quite a good deal to say about the conflict in the evidence, from which it is argued that a peremptory instruction should not be given. But those conflicts in the evidence were, as we shall show, all about matters which were not controlling. A conflict about an irrelevant and immaterial fact is no reason why a peremptory instruction should not be given. We will develop this point further as we progress with the brief.

We now beg the court to note as follows: First. The statutes of this state in reference to injuries sustained by the running of trains, have no application to the case, although the plaintiff in the court below claims to have been injured by the running of a train. The statute does not apply, and the burden of proof imposed by the statute does not exist in this case, for the reason that the circumstances and conditions under which the woman was struck, if she was struck, are all shown by eye-witnesses in the case.

It has been repeatedly adjudged by this court that in such cases the statute has no application.

Second. The peremptory instruction was properly given, because, the statute not applying in the case, the burden of proof is on the plaintiff to show negligence of the defendant, as the proximate cause of her injury.

She has wholly failed to show such negligence. It is true that she testified, and so did her two other witnesses, that the train, as it approached the place where she was injured, which was a public crossing, did not ring its bell or blow its whistle. Some of the witnesses for the railroad company testified that it did. Here was one of the conflicts; but it is a conflict on a wholly immaterial proposition in this case. It was immaterial, for the reason that the plaintiff herself expressly testified, and testified repeatedly, that she saw the train coming, in plain sight, while she was on the gallery of her house, thirty-five or forty steps from the crossing; and that it was the sight of the train itself, approaching on its track towards her baby which was on the track, which made her leave the gallery, run down to the railroad crossing, and go on the track.

Now grant, for the argument, that the bell was not rung, nor the whistle blown. Here it is a wholly immaterial fact, because the plaintiff had fully, and by her own admission, that knowledge which the law intended should be given by the ringing of the bell, and the blowing of the whistle. As to her, then and there these signals were absolutely superfluous and unnecessary. It is elementary that if there was negligence in this particular, the negligence is not available as the basis of a recovery by the plaintiff, because evidently it was not the proximate cause of the injury to her, and could not possibly have been such.

The undisputed and controlling fact in this case is that there was no negligence on the part of the railroad company which in any way could be claimed to have been a proximate cause of the injury. Barring the question of ringing the bell and blowing the whistle, there is no negligence shown at all.

The undisputed testimony for the defense was that as soon as the baby was seen, the engineer put on his emergency brake, and did everything he could to stop the

train. A very weighty fact is that the plaintiff herself, and her husband, testified, and repeatedly, that the train was running very slowly at the time the plaintiff was struck, if she was struck.

We do not claim that it was negligence on the part of this woman to have run in front of that train to save her infant child. The instinct of humanity justifies her in so doing, and decisions are in accord with that instinct on this proposition. The argument in the brief for the appellant on this point is useless. We concede it to be the law.

On this case, as indicated above, we rest on the proposition that there was no negligence on the part of the railroad company shown by the evidence in this transaction; that is to say, no negligence which was the proximate cause of plaintiff's injury.

It cannot be said that the failure to sound the whistle or to ring the bell, was negligence as to the infant, etc., which negligence to the infant must be attributed for the benefit of the mother, because counsel for appellant, in his brief, admits that to have rung the bell, or sounded the whistle for a child of that age, being only seventeen months, would be useless and mean nothing. As to the child it would have been a vain performance, because clearly ineffectual to convey any meaning; as to the mother, it would have been a useless performance, because she knew it already.

McLEAN, J., delivered the opinion of the court.

This is a suit by the appellant against appellee for personal injuries caused by the running of the cars. The plaintiff was injured in an effort to reach her seventeen months old baby, and to save, as she supposed, its life. The plaintiff's home was situated a very short distance, between thirty-five and forty steps, from the railroad track. She was in her house, and came out on the gallery, and, missing her baby girl, saw her on or near the

railroad track, and at the same time saw the approaching train. Immediately the mother frantically ran to rescue her child, and as she crossed the track, the child being on the opposite side, was injured by the passing train. There is a sharp conflict in the testimony as to whether or not plaintiff was struck by the engine. There is some conflict in the testimony as to whether or not the statutory signals required at railroad crossings, as to ringing the bell and blowing the whistle of the engine, were given. The testimony on the part of the plaintiff is to the effect that these signals were not given. There is not a particle of conflict in the testimony as to what the persons in charge of the train did when they saw the child. After the plaintiff closed her evidence, every member of the train crew was put on the stand, and testified to the facts relating to this injury.

The engineer first testified, and he stated, in substance, that he and his fireman and one of the brakemen were on the engine and keeping a lookout. The brakeman was in the cab on the fireman's side, and with the fireman. After having testified as to having given the signals as required by the statute for public crossings, he says as follows: "When I got up near the crossing (some four hundred or five hundred yards), I saw a little child on the east side of the track, and coming toward the track on the crossing, but had not reached the track when I saw it. I says: 'O, Lord, God! There is a baby!' and I threw the brake in the emergency and reversed the engine, and pulled the sand lever open, and did everything I could to stop the train." In answer to the question, "What else could you do to stop the train?" his answer was, "Not a thing in the world." And, further, "When I saw the child coming toward the track, I used every means to stop the train just as quick as I could use my hands. I done it in a second." He and the other employees testified that the engine and train were properly equipped with air brakes, was in good working order,

and that everything was done which was possible to be done in order to stop the train and avoid running over the child. The engineer further says that he saw the mother when she ran across the track about thirty feet ahead of the engine, and picked up the child which was over on the north side of the track. This testimony of the engineer was corroborated by the fireman and the brakeman, who were on the engine, and also as to the emergency brakes being applied; and as to the engine and train being in good order and the emergency brakes being applied the flagman and the conductor also testified. When the engineer first saw the little child close to and approaching the track, the train was running at a rate of speed of about twenty-five miles an hour. By the time the engine reached the crossing the speed of the train had been very materially reduced from twenty-five to something like five or six miles an hour. The train was a freight, with from twenty-five to thirty cars.

The evidence showed that those in charge of the train were competent and skillful men, and understood their business. There was not a particle of evidence in the record that either directly or indirectly, or in any way, contradicted the evidence on behalf of the defendant. Mrs. Billingsley testified that, when she first saw the child on the track, she also at the same time saw the train, and that the train was some four or five telegraph poles distant from the crossing where the child was; and the evidence discloses that the distance between the telegraph posts is about one hundred yards. After all the evidence was in, the court gave a peremptory instruction to find for the defendant. The case is here on that one proposition.

There being conflict in the testimony as to whether the statutory signals required to be given at public crossings were given, we must resolve this question in favor of the plaintiff, and must assume that the signals were not given. It may be said that proof of injury by the

running of the cars is *prima facie* evidence of liability on the part of the defendant by virtue of the statute (Code 1906, section 1985). *Fuller* v. *I. C. R. R. Co.* (opinion this day delivered) 56 South. 783. Does the evidence overcome this presumption?

In order for liability to be fastened upon the defendant, it is necessary that its negligence should be the proximate cause of the injury. Let it be borne in mind that the party injured and the party suing is the mother, and not the child. From all the facts in evidence—and let it be understood that all the facts and all the circumstances in any way relating to the injury were testified to by the witnesses for both the plaintiff and the defendant—it is manifest that negligence upon the part of the defendant did not cause the injury. What is or what is not the proximate cause of an injury seems to be incapable of any strict definition which will suit every case. Proximate cause is said to be a ''vexed metaphysical question;'' but it can be safely said that, in order to constitute a proximate cause, there must be causal connection between the injury and the negligence complained of.

While the defendant was negligent in failing to give the signals for the crossing as required by law, the plaintiff cannot complain, because she saw the train long before it reached the crossing, and there was no causal connection between the failure to give the signal and the plaintiff's injury. The purpose and object of requiring these crossing signals to be given is to warn persons who are about to cross the track, or those whose teams are so near the crossing as, reasonably and naturally, may be expected to become frightened by the train, and thus give the parties an opportunity to get the team away from the track. Such was the conclusion of this court in *Skipwith* v. *R. R. Co.,* 95 Miss. 50, 48 South. 964, relied on by appellant. It is urged with great ability and ingenuity that, if these signals had been given,

the mother would have gone in search of her child earlier—in ample time to have rescued the child, and have removed herself from danger. In the argument of this proposition, the able and astute counsel for appellant place themselves upon the springboard of imagination, and leap into the realm of conjecture. Their argument upon this proposition is conjecture, pure and simple; and in such an instance "experience becomes an infant and speculation a contingency." Judgments of courts and verdicts of juries should not rest upon, so airy a foundation.

The mother in going upon the railroad track at the time and under the circumstances, in order to rescue her child from impending danger, was surely not guilty of any contributory negligence. We base our conclusion solely upon the proposition that the proximate cause of the injury was not the negligence of the defendant.

In the Fuller case, this day delivered, we hold that the simple proof of injury by the running of the cars is *prima facie* evidence of liability; but we further say that presumptions in all cases must yield to the facts, that, when all the facts relating to the injury are in evidence and there is no conflict, the court has a right to draw a conclusion based upon the facts, and in proper cases to give a peremptory instruction as these facts may justify. We further say in that case that positive, direct evidence as to the time when parties are seen upon the track and as to the skill and diligence used thereafter to avoid the injury is not indispensable; that these facts may be proved by circumstances, and are inferences to be drawn by the court or jury in applying their common observation and experience. We so hold in this opinion.

The facts relating to the cause of the injury completely exonerate the defendant, and, if a verdict had been returned by the jury upon the proven facts, we would not permit the verdict to stand. If credence is to be given to human testimony, it must abide with the testimony of

the defendant's witnesses in this case. The engineer, fireman, brakeman, flagman, and conductor, all of the train crew, went upon the witness stand and answered, without evasion or subterfuge, all interrogatories propounded. They came out unscathed from under a hot fire of the searching cross-examination, conducted by artful and learned lawyers, with a few inconsequential discrepancies upon irrelevant and immaterial matters— just enough to demonstrate that the evidence had not been manufactured; and their evidence, taken as a whole, was symmetrical and forceful, and stands forth in the record, clear and distinct, like, silhouetted against the sky, the human figure of an undressed gladiator, perfect in all of its parts.                    *Affirmed.*