## Yazoo & M. V. R. Co. v. Green.

(Division B. April 10, 1933.)

[147 So. 333. No. 30493.]

**A. M. Pepper,** of Lexington, **H. D. Minor, Chas. N. Burch** and **C. H. McKay,** all of Memphis, Tenn., for appellant.

**J. G. Holmes,** of Yazoo City, and **P. P. Lindholm,** of Lexington, for appellee.

Argued orally by **H. D. Minor** and **A. M. Pepper,** for appellant, and by **P. P. Lindholm** and **J. G. Holmes,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

At Gwin, in the county of Holmes, there is a junction point from which one branch line of appellant railroad departs from the main line and goes to Durant. A passenger station is maintained at Gwin, and at the time of the injury complained of there was a roundhouse, machine ship, powerhouse, and there were many tracks, one being the main line, two passing tracks, a caboose track, a lead track, nine classification tracks, four repair tracks, and also others. Across the network of tracks there was a path used by the employees, and also by the public, leading from the passenger platform in a westerly direction to highway No. 49, along which there were some stores.

After dark on the night of the injury complained of, appellee left his home on the east of all the above-described structures and tracks and went along the path mentioned to a store on said highway; and, having made a purchase there, he started on his return trip, using the pathway aforesaid. He had proceeded about two-thirds of the necessary distance when he reached the lead

track, which he found was blocked by a switch engine going north and drawing a cut of some twenty-five cars. This train was then going forward, not backward, and it occurred to appellant that he could perhaps save some time by walking along south next to this train of cars and thus get across the lead track earlier than if he should simply wait. Thereupon he turned south walking along the cut of cars, but soon after he had started south the train reversed its direction and began backing south into one of the classification tracks. The train was then proceeding at the rate of from six to ten miles per hour, and was not preceded by a servant of the railroad to give warning. While appellant was thus walking alongside this cut of cars, he stumbled over some coal that had been dropped from a tender, which caused appellant to fall under the train, and the north trucks of the sixth car passed over one of his feet, severely injuring him.

Appellee sued the railroad company; the declaration being in two counts. The first count was based upon the so-called prima-facie statute, section 1580, Code 1930, and the second count upon the violation by the railroad company of section 6119, Code 1930, which reads as follows: "It shall be unlawful to back a train of cars, or part of a train, or an engine into or along a passenger depot at a greater rate of speed than three miles an hour; and every such train, part of a train, or engine backing into or along a passenger depot, and within fifty feet thereof, shall, for at least three hundred feet before it reaches or comes opposite to such depot, be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence."

As to the first count, all the facts having been shown by the evidence, that count disappears, and is not relied on by appellee. Upon the second count, and which is based solely upon the statute last quoted, it is at once apparent that no recovery can be had on the complaint

that the cut of cars when it began to back was not "preceded by a servant of the railroad company on foot not exceeding forty nor under twenty feet in advance to give warning." This is apparent as aforesaid, because, when appellee first encountered this cut of cars, it was proceeding forward, and when it began to back, several cars were south of him, so that, if in backing the cut had been preceded by a servant, as mentioned in the statute, the servant would have been a considerable distance south of appellee, and in the very nature of the situation would have had no efficacy in warning appellee. Besides which, in a situation such as this, no person can successfully claim the benefit of a warning statute when the person injured already has as full and complete information as could have been imparted by the statutory warning. This principle has been expressly recognized in crossing cases where the court has said that the failure of the railroad company to give the statutory warning signals cannot be the basis of liability where it appears that the party injured was fully aware, and for the full time, of the approach of the train. Billingsley v. Ill. Cent. R. Co., 100 Miss. 612, 624, 56 So. 790; Yazoo & M. V. R. Co. v. Cox, 132 Miss. 564, 570, 97 So. 7.

If the recovery on the part of appellee can be upheld, it must be upon the ground that the train, of the presence of which appellee was perfectly aware at the time, was backing at a greater rate of speed than three miles per hour. In order that this contention may be sustained in behalf of appellee, it must be shown that the excess of three miles per hour in the rate of speed of the cut of cars was the proximate cause of the injury. We have been pointed to no case where it has heretofore been claimed that the rate of speed in backing a train in excess of three miles per hour is sufficient, without more, to authorize a recovery. It is so claimed, however, in this case by appellee, quoting from the language of the Metcalf case, 84 Miss. 242, 251, 36 So. 259, 261, wherein the court said that the statute "was designed to discour-

age the reckless practice of backing trains without warning on premises generally frequented by numerous persons, by imposing liability on railroad companies for all infractions of the rule thereby established, and allowing all persons injured to recover full damages without reference to mere contributory negligence."

Exactly the same may be said of the purpose of the statute prohibiting the running of trains at a greater rate of speed than six miles per hour within municipalities, because these municipalities are crowded centers where numerous persons will frequently, intentionally, or thoughtlessly place themselves on railroad tracks; but it has uniformly been held by this court that, in order that recovery may be had under the statute last mentioned, the excessive speed must be shown to have been the proximate cause of the injury. Crawley v. Richmond, etc., R. Co., 70 Miss. 340, 13 So. 74; Howell v. Ill. Cent. R. Co., 75 Miss. 242, 21 So. 746, 36 L. R. A. 545; Alabama & V. Ry. Co. v. Carter, 77 Miss. 511, 27 So. 993; Clisby v. Mobile & O. R. Co., 78 Miss. 937, 947, 29 So. 913. The case in which this principle has been most recently applied is Bufkin v. Louisville & N. R. Co., 161 Miss. 594, 137 So. 517. In that case a passenger, in order to catch a train that had already begun to move and had attained a speed of fifteen miles per hour, ran into a bystander, with the result that the latter was thrown under the train and seriously injured. It was held by the court that the running of the intending passenger against the bystander was the proximate cause of the injury. So, here, the stumbling of appellee over the lumps of coal with which he came in contact as he was walking along the side of the train was the immediate or proximate cause, in which connection it may be remarked that no complaint was made in the declaration nor is here urged in the briefs in respect to the coal; and, if there had been, we can see no reason for attaching actionable negligence to the railroad company on account thereof. For one

reason, this coal was not in the path customarily used, but there are other reasons leading to the same result.

Appellee says, however, that proximate cause in a case such as this is a question for the jury, and that, since the issue has been decided favorably to appellee by the jury, this places the judgment beyond the reach of a reversal. In stating the facts, we have taken the version of appellee himself, and according to his own testimony the proximate cause of the injury was as above stated. Any other theory would import into the case, in favor of appellee, or would introduce into the facts in this respect, the element of pure conjecture—which is not sufficient to support a verdict. This very question was involved in the Bufkin case, supra, the appellant there insisting that it was a question for the jury to say whether or not appellant would have been injured if the train had been operating at a lawful speed; but the court rejected the contention. So much more so should that result be proper here, because appellee says himself that he was run over by the north trucks of the sixth car. It would be pure speculation or conjecture whether, if the train had been running at three miles an hour, he still would or would not have been injured. Appellee does not undertake to say that he was not opposite and immediately next to the said north trucks when he stumbled and fell.

Reversed, and judgment here for appellant.