LOUISVILLE & N. R. Co. *v*. JONES.

(Division A. Dec. 3, 1923. Suggestion of Error Overruled Jan. 7, 1924.)

[98 South. 230. No. 23705.]

1. APPEAL AND ERROR. *Finding on conflicting evidence not disturbed.*

Jury's finding on conflicting evidence will not be disturbed on appeal.

2. RAILROADS. *Operating engine at excessive speed not proximate cause of injury to eye from spark.*

Operation of train at an excessive rate of speed *held* not the proximate cause of injury to plaintiff's eye from cinder from locomotive, in view of undisputed evidence that the locomotive threw fewer and smaller cinders while traveling at a fast rate of speed than when traveling at a slower rate of speed.

3. RAILROADS. *Emission of cinder from locomotive held not negligence per se.*

    In an action against a railroad for injuries to plaintiff's eye from cinder from engine, mere proof of the emission of a cinder the size of a pinhead did not entitle plaintiff to recover, the emission of such cinder not constituting negligence *per se.*

4. EVIDENCE. *Evidence that cinder entering eye of one seated in automobile came from railroad engine held not contrary to physical facts, though wind shield was between him and engine.*

    In an action against a railroad for injuries to plaintiff's eye from cinder from engine, evidence that the cinder entered plaintiff's eye while seated in automobile thirty feet from track waiting for train to pass crossing, though the windshield was up between plaintiff and the engine, and no wind was blowing at the time, *held* not contrary to the physical facts.

5. APPEAL AND ERROR. *Jury sole judge of facts.*
    The jury was the sole judge of the facts.

APPEAL from circuit court of Harrison county.
HON. D. M. GRAHAM, Judge.

Action by T. L. Jones against the Louisville & Nashville Railroad Company and another. Judgment for plaintiff, and defendants appeal. Reversed and judgment rendered.

*Smith, Young, Leigh & Johnston,* for appellants.

The *prima-facie* statute of Mississippi, Hemingway's Code, section 1645, Code 1906, section 1885, has no application to this case, nor did the plaintiff seek to apply the same.

1. It has no application, because all of the facts with reference to the construction, condition and operation of the train were fully shown by the evidence. *Hines* v. *McCullers,* 121 Miss. 666, 83 So. 734; *Ala. & B. R. Co.* v. *Thornhill,* 63 So. 674; *Krebs* v. *Pascagoula St. Ry. & Power Co.,* 78 So. 753.

2. Because this statute presumes negligence on the part of the Railway Company, where a person has been

injured by the operation of a train, until the facts have been explained, but it does not presume any particular act of negligence, nor does it presume negligence on the part of any particular employee.

With these principles in mind, we will consider the case in its most favorable aspect to the plaintiff. There was no witness to the accident, except the plaintiff himself, and the railroad employees testified as to the proper construction, equipment, operation and management of the train. The plaintiff testified that he stopped thirty feet from the track to permit the train to go by, ''and a flash came out and a lot of cinders, and they were hot, and one hit me in the right eye, and I slapped my hand over it and ran the car with one hand, and left it in front of the garage.''

The plaintiff also testified, ''The engine was puffing,'' and that the train was going about fifteen miles an hour; that the wind was not blowing; that there was not enough wind to distinguish at that time the direction of the wind.

Numerous witnesses on behalf of the defendants testified positively that the spark arresting features on the engine were of standard and modern design, and were in first class condition and repair, without any defects whatever; that the train, at the time it passed this crossing, was only a few yards from its destination, and was not working steam, but was running idle; that while a train is not working steam, or running idle, it does not throw out cinders; that a train when working steam will throw fewer cinders while running at a greater rate than six miles an hour than it will at a lesser rate than six miles an hour; that no matter how many cinders or sparks a train is throwing out, it always throws them straight up in the air, and they are only carried to one side by the wind or currents in the air.

The defendant's train, being operated by Engineer Holloway, was crossing over Washington Avenue, a street which intersected the station platform, at a dis-

tance of about three hundred yards from where the engine stopped. The plaintiff, driving a Ford runabout, with an extra low top that was up, and a windshield that was also in front of him, stopped about thirty feet from the track at the crossing. The engine passed over the crossing, running at least fifteen miles an hour, and just as it passed over, plaintiff saw a flash come out, and a lot of cinders, and they were hot, and one hit him in the eye; the train was not working steam, but was puffing. A cinder the size of a pin head was removed from his eye.

With this evidence in mind, let us consider whether or not the plaintiff proved any acts of negligence alleged on behalf of the railroad company and the engineer, and that such acts caused the accident. Conceding that the train was going over six miles an hour, the undisputed evidence is, first, that if the engine is not working steam, the speed has nothing to do with throwing the sparks; second if the engine is working steam, less sparks are thrown out at fifteen miles an hour than at six miles an hour. If you have any doubt of this, all you have to do is to listen to one. The puffing noise made by an engine which is drifting, and not working steam, is the result of the air being driven out of the cylinder while the piston works up and down in the cylinder. When a steam engine is running idle, instead of steam pushing the piston, the piston necessarily draws in and forces out air from the cylinder, thus making a puffing noise as it operates.

It is plain, therefore, that the undisputed evidence shows that the speed of the train was not the cause of the plaintiff's getting a cinder in his eye. The second count of the complaint alleges that the flues were defective. The plaintiff absolutely failed to prove the allegations of this count, because the undisputed evidence showed, first, that there was no leak in the flues whatever; second, that had there been a leak in the flues, the water would not have dripped into the fire, but would have fallen upon the brick arch, and been drained off. Third, the blower was not

operated by the defendant, Holloway, but is operated exclusively by the fireman, so that if there was any negligence in the operation of the blower, it was that of the fireman, and not of the engineer.

The third count is based upon the alleged negligence of the company in furnishing a defective screen, combined with the act of the engineer in exceeding the speed limit. Plaintiff failed to prove this count, because the undisputed evidence shows, first, that the screen was in no way defective, but was in proper condition; second, that the speed of the train was not the proximate cause of the injury, because when the engine is not working any steam, it is immaterial at what speed it is running; and third, because if it is operating steam, it throws less cinders out at a rate faster than six miles an hour than at a rate less than six miles an hour.

The testimony of the plaintiff in this case is entirely contradictory to all reason. It is common knowledge that if an engine throws out any cinders, it throws them out of the smoke-stack, which points straight up in the air. The cinders cannot come out of the side of the engine, they have to go straight out of the top. When they are hurled straight up in the air, if gravity is the only force that operates upon them, they will come straight back to the ground or on top of the train. In order to carry the cinder to one side or the other, there must be some wind or other force. Nevertheless, the plaintiff claims that there was no wind or other force, and he also claims that the cinder not only traveled thirty feet from the track, but it came around the windshield and under the top and hit him with such force that it embedded itself so deep in his eye that it required a skilful oculist to remove it. Can anyone believe that when the windshield was in front of the plaintiff's eyes and an extra low top over his head, the cinder could curve around and hit him in the eye, without any wind blowing?

The fact that the plaintiff saw a flash come out of the chimney does not indicate anything wrong in the operation of the engine. If such a flash did come out, we don't know what caused it, but it may have been caused by the fireman stirring the fire, or throwing some fine dust into the fire, which flared up, or it may have been a flare from accumulated coal gas. The mere fact that a flash did come out of the chimney, if one did, in no way indicates that the defendant or the engineer was guilty of any negligence. It certainly cannot be said to be caused by the speed of the train or any act of the engineer. If it was caused by anyone, it was most likely caused by the fireman.

We also call the court's particular attention to the fact that the cinder was no larger than the head of a pin. It is common knowledge that a locomotive cannot be constructed so that it will generate sufficient steam to pull a train and not throw out some cinders. To make a fire burn there must necessarily be a draft. A locomotive has no natural draft, but must have draft created by the exhaust of steam. In order to have the draft, the netting must have openings sufficient to permit the smoke to be drawn through. If the netting was made so small as to prohibit the passage of cinders the size of a pin head, the train could not operate. For this reason, the courts in every state have recognized that it is not negligent for a train to emit cinders, unless they are of unusual quantity or unusual size. In this case there is no proof that the cinders emitted were of unusual quantity or unusual size. All of the facts have been shown by the defendants, so that the *prima-facie* case does not apply. The plaintiff has absolutely failed to establish any act of negligence on the part of the defendants which in any way can be said to be the proximate cause of his injury.

*Mize & Mize,* for appellee.

The railroad company denied that the train was running over six miles an hour and testified that a train running at the rate it was running would not throw out cinders. So the testimony made it purely a question of fact: Jones saying that he drove up to the crossing as the train was approaching; that the train was going at about fifteen miles an hour and he deemed it not prudent to try to cross in front of the train and waited at the crossing about thirty feet from the train for it to pass over the crossing, and that there was a flash and cinders came out and a hot cinder flew in his eye and injured it. The railroad company testified that the train was not going over six miles an hour.

If the appellee was telling the truth, the excessive rate of speed was the proximate cause of the injury, and he was entitled to a verdict. Of course, if the train was not exceeding six miles per hour, appellee had no cause of action; but the jury from their verdict manifestly did not believe the testimony of appellant's employees. It is the same old case of an injured party testifying to a cause of action and the railroad company's employees testifying that they were never so particular in the operation of the train as on this occasion and were not guilty of any negligence; and in this predicament it has been held by this court that the case presents a question of fact for the jury and this court will not disturb it, on that ground.

This case falls within the case of *Home Insurance Company* v. *Railroad,* 70 Miss. 119. We could multiply this decision by citing a large number of similar cases, but deem it unnecessary. If Jones' testimony is believed, if the appellant had not been operating said train at more than six miles an hour, when it entered the speed limit zone, he could have gotten across the track before the train reached the crossing, or a good many things might not have occurred if the train had been running at six miles an hour that occurred running at fifteen miles per hour; and all of this was a question for the jury.

Argued orally by *Harry Smith* for the appellant, and by *J. H. Mize* for the appellee.

HOLDEN, J., delivered the opinion of the court.

This is an appeal from a judgment for two thousand dollars against the L. & N. Railroad Company, in favor of appellee, Jones, as damages for injury to the sight of his eye, claimed to have been caused by the negligence of the railroad in emitting a hot cinder from one of its engines, at a road crossing, which got into his eye and permanently impaired his sight.

The railroad company urges several grounds for reversal, but we shall pass upon one only, and that is whether or not the lower court erred in refusing to grant a peremptory instruction for appellant upon the ground that the evidence in the case fails to support the charge of proximate negligence.

The record shows a case of this sort: Mr. Jones was travelling in a Ford automobile in the town of Ocean Springs, and, when he approached a public railroad crossing, he stopped thirty feet from the track, and waited for appellant's train to pass. While sitting in his car, which had a top on it, and the windshield up, a cinder about the size of a pinhead lodged in his eye while the train was passing. He testified that as the engine passed him he saw a flash from the puffing smoke stack and a number of cinders were emitted from the engine, and one of them got into his eye. He said there was no wind blowing from any direction at the time. The train was running fifteen miles per hour, which was in violation of the six mile law in the municipality. After the train passed, Mr. Jones visited a doctor, who extracted the cinder particle, and said that it appeared to have been a hot cinder, and was about the size of a pinhead or less. The sight of the eye was permanently impaired.

The testimony offered by the railroad company proved conclusively, that is, without dispute, two facts: First, that the screen or netting used in the engine was in good and proper condition, and that no cinders of any substantial size could be emitted through this netting; that no netting could be used which would not emit small particles of cinders or sparks, because it would be necessary to have some opening in the netting for the draft to go through. Second, that the faster the speed of the engine the less cinders, and smaller in size, would be emitted through the smoke stack. That is to say, if the engine was exhausting through the smoke stack while going at a rate of five miles an hour, it would throw larger cinders and a greater quantity of them than if it were running at a speed of fifteen or twenty miles per hour.

The railroad company also showed by its testimony that it was not running more than six miles per hour; that the engine was not working steam at the time it passed over the crossing in question, but was "drifting" into the station a short distance away, where it was to stop. The employees also testified the engine was not throwing any cinders whatever at that point; was not puffing steam there; and no cinders could have been emitted or thrown through the netting of the engine, which was in good order. Of course, the conflict in the testimony offered by the plaintiff and that of the defendant was settled by the jury in favor of the plaintiff below, and is not to be disturbed here.

The point urged by the appellant railroad company is that the proof failed to show the railroad company was negligent in operating with a defective cinder netting in its engine, and that no contributing negligence is shown on account of the unlawful speed, because the speed did not proximately cause the injury. The case was tried below on the theory that the combined negligence of the engineer in exceeding the speed limit and the negligence

of the railroad company in using a defective cinder netting caused the injury to the appellee.

We think the appellee must fail in his suit, for the reason the undisputed evidence in the case shows the railroad company was not using a defective cinder netting, but that it was in good condition, and the small cinder emitted by the engine, which lodged in appellee's eye, was not due to faulty screen or netting, because such a small particle would be emitted through a reasonably good netting; and therefore the emission of the small cinder which entered appellee's eye was not negligence on the part of the railroad company.

And it appears conclusively in the record that the excessive speed of the engine did not proximately cause the injury, because the undisputed testimony shows there was less likelihood of a cinder being thrown upon appellee while running at a speed of fifteen miles per hour than if running at five miles per hour. The unlawful speed was not the proximate cause of the cinder leaving the engine and entering appellee's eye.

So we conclude the appellee failed to show negligence which proximately contributed to the injury either through the violation of the speed law or through the failure of the railroad to operate with a suitable netting in the smoke stack of its engine. We do not think either of these charges of negligence was sustained by the proof, for it is clear that, even though the engineer was running at an excessive rate of speed, still the speed did not necessarily cause the cinder to fall upon appellee, the conclusive proof being to the contrary; and the emission of a cinder the size of a pinhead is not, in our opinion, negligence *per se,* and certainly it is not negligence where it is shown the netting used in the smoke stack was in good condition, and was the proper equipment.

The point is raised by appellant that the story told by the appellee is so unreasonable and physically impossible that the evidence is too unreliable to support a verdict.

We note the automobile in which appellee was sitting was a Ford car with a low top which extended out over the appellee, that the windshield was up between appellee and the engine, and no wind was blowing at the time, and yet the small cinder left the engine and drifted thirty feet toward the automobile, and then went around, over, or under the windshield and up into appellee's eye.

We confess the travel of this cinder was rather remarkable; however, it was not an impossible story, and the jury was the sole judge of the facts, and we are not prepared to say the judgment would be disturbed on this point; but for the reasons pointed out above we find the appellee has no case.

The judgment of the lower court is reversed, and judgment entered here for appellant.

Reversed, and judgment here for appellant.

*Reversed.*